1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES PAUL DANIEL,                          Case No.  1:22-cv-01094-BAM

12                   Plaintiff,
                                                 **ORDER REGARDING PLAINTIFF'S**
13            v.                                  **MOTION FOR SUMMARY JUDGMENT**

14   KILOLO KIJAKAZI, Acting Commissioner         (Doc. 21)
     of Social Security,
15

16                   Defendant.

17

18

19                                    **<u>INTRODUCTION</u>**

20            Plaintiff James Paul Daniel ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying his application for disability insurance

22   benefits under Title II of the Social Security Act.  The parties' briefing on the motion was submitted,

23   without oral argument, to Magistrate Judge Barbara A. McAuliffe.  (Docs. 21, 25.)[1]

24            Having considered the parties' briefs, along with the entire record in this case, the Court finds

25   that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

26

27   _____

28   [1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
     including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. 17.)

record and is based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's appeal and affirm the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff applied for Title II application for disability insurance benefits on September 3, 2019, alleging disability beginning February 28, 2017, due to degenerative disc disease, degenerative joint disease, sciatica, arthritis, right arm impairment, vertigo, memory loss, anxiety, and depression.  AR 15, 59, 270-271.[2]  Plaintiff's application was denied initially and on reconsideration.  AR 75-92, 93. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and ALJ Michael Comisky held a hearing on June 16, 2021.  AR 36-58.  ALJ Comisky issued an order denying benefits on the basis that Plaintiff was not disabled on July 6, 2021.  AR 12-35.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  This appeal followed.

**June 16, 2021 Hearing Testimony**

ALJ Michael Comisky held a telephonic hearing on June 16, 2021. AR 36-58.  Plaintiff appeared with his attorney, Lars Christenson.  *Id.*  Stella Frank, an impartial vocational expert, also appeared and testified.  AR 53-56.  The ALJ began by admitting exhibits 1A through 12F and summarizing the procedural history of the matter.  AR 38-39.  Plaintiff's attorney opened by noting that Plaintiff's argument was the same as in the pre-hearing brief and Exhibit 12E.  AR 41.

In response to questions from the ALJ, Plaintiff testified that he lived in an apartment with his wife.  AR 41.  Plaintiff had received a high school diploma and had done a few months of trade school in computers and business in his early 20s.  *Id.*  Plaintiff testified that he worked as a security guard for Dwayne D. and Shaun Rodriguez in 2006 and 2007 and then as a security officer at a hospital from 2007 to 2017.  *Id.*  As security guard for Dwayne D. and Shaun Rodriguez, Plaintiff testified that he "was contracted to the same hospital" and patrolled inside and outside of buildings, went on calls when needed, assisted with handling patients, assisted with walking hostile visitors out of the area, and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

helping with cars that were broken into.  AR 42.  Plaintiff testified that this role was the same as the Kaweah Delta Health Care District job.  *Id.*  Plaintiff agreed that the heaviest weight involved in that role would be restraining people.  *Id.*  He testified that he could not do this kind of work now,f as he has "been in a physical decline" due to arthritis and pain in his arms, leg, and back which have not improved.  *Id.*  Plaintiff added that he looked for work after employment ended with the hospital but had not found a new position.

Plaintiff testified that he was unsure why he had requested disability from February 28, 2017, but believed it was when he filed.  AR 42.  He testified that he had not previously filed for disability and never filed for unemployment as he wanted to go back to work, but eventually filed after spending approximately a year being unable to find a new position.  AR 42-43.  Plaintiff testified that he had previously settled a workers' compensation case.  AR 43.  In response to a question from the ALJ regarding whether he had received a state or employer disability, Plaintiff testified that at his last HR meeting he was told that he needed to be on permanent disability because of his situation, but he did not want to go on disability of any kind or apply for unemployment, but his employer gave him paperwork to file for unemployment through the state.  AR 43.  Plaintiff further testified that he did not know what vocational rehabilitation was.  AR 43-44.

Plaintiff testified that following the security guard work, he was trained for and given a desk job that would involve registering patients at an imaging center.  AR 44.  He testified that he had difficulties with this job given issues with his memory and "kept messing up."  *Id.*  Following errors in this position, Plaintiff was told that there were no further accommodations within his former employer's company and would be terminated within a few weeks.  AR 44-45.  He testified that he had not worked since February 28, 2017.  AR 45.

In response to questions from his attorney regarding Plaintiff's right shoulder issues, Plaintiff testified that he can only sleep on his left side, cannot sleep on his back, and is in constant pain with his right shoulder.  *Id.*  He further stated that it is difficult to bathe with his right shoulder and he does not drive unless he absolutely needs to.  *Id.*  He testified that he would only drive to the grocery store a few blocks away and would drive left-handed with one hand.  *Id.*  Plaintiff testified that he could reach above his head or above his shoulder with his right arm, but it was "extremely difficult, without being

1  in pain" and it hurt "so much to raise it up there."  AR 45-46.  Plaintiff testified that he was able to

2  reach out with his right arm only for a few seconds because the weight of his arm pulls down his

3  shoulder and would hurt too much.  AR 46.  He testified that he has a sharp, throbbing pain in his right

4  shoulder and was informed of "muscle torn from muscle, muscle torn from the bone, muscle torn from

5  the cartilage," and a "tear inside the cartilage."  *Id.*

6       Plaintiff stated that he did physical therapy for his arm until his job stopped the therapy

7  because it was not helping his arm improve.  *Id.*  He added that he would be in extreme pain when a

8  physical therapist would touch a certain area in his arm where the joint came together on his arm.  AR

9  46-47.  Plaintiff testified that medications helped "some" with his pain, and he also took "generic

10 arthritis med over the counter," but it was difficult to continue the medication as he had not been able

11 to go in and see the doctor.  AR 47.  He testified that his wife was unable to help as she was disabled

12 and had not driven for a while.  *Id.*

13      Plaintiff testified that he experienced pain that affects his arms and hands due to the

14 degenerative disc disease.  AR 47-48.  The pain made it difficult for him to move, and doing grocery

15 errands was difficult and usually involved help from grocery store employees.  AR 48.  Plaintiff

16 testified that he did not stand unless he had to as standing aggravated the pain in his back given the

17 degenerative disc disease.  *Id.*  Plaintiff testified that his physical problems and inability to work also

18 caused "a really, really, bad depression" that he was coping with.  AR 48-49.  Plaintiff testified that it

19 took a few years for him to come to terms with not being able to do a job that he loved and said that he

20 became irritable and "not very talkative" as a result.  AR 49.  Plaintiff testified that he was previously

21 on medications for depression, pain, and arthritis until he could not "be seen to continue it" and was

22 only taking generic arthritis medication at the time of the hearing.  *Id.*

23       Plaintiff said that on a typical day, he would stay up all night with his wife and would bring

24 her food or water.  AR 50.  Plaintiff said that when he would bring his wife food, he would warm the

25 food up in the microwave but would sit until the microwave was finished to avoid feeling pain from

26 standing.  *Id.*  Plaintiff testified that he is responsible for laundry but does not do it on a regular basis

27 and had piles of laundry that he had not touched in weeks.  *Id.*  Plaintiff said that their neighbor would

28 sometimes cook meals for them.  AR 51.

Plaintiff noted that he also had memory issues and would forget things when he worked at his desk job. *Id.* He discussed this with one of his supervisors and told them that he needed to step down. *Id.* He testified that there were times where he struggled to recall thoughts but did not inform his employers about his memory issues initially, as he did not want to lose his job. AR 51-52. Plaintiff said that after he told his supervisor about his memory issues, he then received a call from HR noting that he would be pulled from the floor. AR 52. Plaintiff said that he was terminated soon after. *Id.* Plaintiff stated that his memory issues also affected his interactions with his wife, where she would need to remind him about recent conversations. *Id.* Plaintiff also noted that his memory issues affected his ability to drive, as he had forgotten where he parked his car. AR 52-53.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. AR 53-56. Plaintiff's counsel stated that he did not have any objections to the Vocational Expert's ("VE") qualifications. AR 53. VE Stella Frank first affirmed that she had an opportunity to review the case's vocational factors. *Id.* The VE classified Plaintiff's past relevant work as Security Guard (DOT No. 372.667-034) with an SVP of 3 and classified as light per the Dictionary of Occupational Titles ("DOT.") *Id.* The VE further noted that based on testimony, force or lifting was likely at the "heavy level as performed." *Id.*

The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider a hypothetical person with the same age, education, and past relevant work of the Plaintiff. AR 54. The ALJ added limitations of: lifting or carrying 20 pounds occasionally and 10 pounds frequently, standing or walking for six hours in an eight-hour workday, sitting for six hours in an eight-hour workday, is right-hand dominant, can push or pull in the limits for lifting and carrying occasionally with the right upper extremity, can push or pull in the limits of lifting and carrying with all other extremities, can do occasional overhead reaching with the right upper extremity, can frequently climb ramps and stairs, can occasionally use ladders, ropes, and scaffolds, can frequently balance, kneel, and crouch, and can occasionally stoop and crawl, can understand, remember, and carry out simple work instructions and tasks at an SVP 2 level. AR 54. The VE testified that the hypothetical individual could not return to past relevant work. *Id.* The VE said that the individual could do other work in the national economy, including: Marking Clerk (DOT No. 209.587-034, with

an SVP of 2, light work, and 129,000 jobs nationally); Router (DOT No. 222.587-038, with an SVP of 2, and 35,000 jobs nationally); and Shipping Weigher (DOT No. 222.387-074, with an SVP of 2, and 9,000 jobs nationally).  *Id.*

Plaintiff's attorney then examined the VE.  AR 55-56.  Plaintiff's attorney asked the VE to consider an individual who: could lift and carry ten pounds frequently and occasionally; had the same postural limitations as given in the first hypothetical such as occasional overhead lifting; could frequently climb ramps and stairs; could occasionally climb ladders, ropes, and scaffolds; could frequently balance, kneel, and crouch; could occasionally stoop and crawl; could only occasionally reach overhead and with the right dominant upper extremity.  AR 55.  The VE stated that the light, SVP 2 occupations cited would not remain, though there would be other light occupations available to the hypothetical individual.  *Id.*  The VE identified those positions as School Bus Monitor (DOT No. 372.667-042, light, SVP 2) with 21,000 jobs nationally; Usher (DOT No. 344.677-014) with 4,000 full-time jobs nationally; and Children's Attendant (DOT No. 349.677-018) with 5,000 jobs nationally.  AR 55-56.

Plaintiff's attorney then asked the VE to add to the second hypothetical individual the additional limitations of a reasoning level of 1.  AR 56.  The VE testified that the occupations cited for the second hypothetical individual would not remain and there would be no others to cite within those limitations.  *Id.*

The ALJ then asked if Plaintiff had any further relevant issues or items he would like to discuss, and Plaintiff replied that he could not think of any.  AR 57. The ALJ asked the VE if the VE's testimony was consistent with the DOT and Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles ("SCO"), and how the VE arrived at any answers that differed from the DOT and SCO's guidance.  *Id.*  The VE testified that her testimony was consistent with the DOT and SCO for the specific limitations addressed by publications, but for the issue of overhead reaching or any differences in the use of bilateral versus unilateral upper extremities, the VE relied on her education, training, and experience in vocational rehabilitation and disability case management.  *Id.*

///

///

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 17-35. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of February 28, 2017. AR 17. The ALJ identified the following severe impairments: degenerative joint disease of the right shoulder, degenerative disc disease of the lumbar spine, a major depressive disorder, attention deficit hyperactivity disorder (ADHD), a cognitive disorder, and obesity. *Id.* The ALJ additionally evaluated and discussed other impairments that did not constitute severe medically determinable impairments, including Plaintiff's hypertension and coronary artery disease. AR 17-18. The ALJ noted that these impairments were not shown to have "more than minimally limiting his daily activities or ability to work for twelve consecutive months." AR 18. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. *Id.*

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the limitations that Plaintiff: can lift or carry twenty pounds occasionally and ten pounds frequently; can stand or walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday; is right hand dominant; can push or pull in the limits for lifting and carrying occasionally with the right upper extremity; can push or pull in the limits for lifting and carrying with all other extremities; can do occasional overhead reaching with the right upper extremity; can frequently climb ramps and stairs; can occasionally use ladders, ropes and scaffolds; can frequently balance, kneel and crouch; can occasionally stoop and crawl; and can understand, remember and carry out simple work instructions and tasks at an SVP 2 level. AR 20. In doing so, the ALJ considered all of Plaintiff's symptoms, objective medical evidence and other evidence, medical opinions, and prior administrative medical findings. AR 20-28.

7

With this RFC, and considering Plaintiff's age, education, and work experience, the ALJ found that Plaintiff was unable to perform any past relevant work.  AR 28.  However, the ALJ found that there were jobs that exited in significant numbers in the national economy that Plaintiff could perform, including: Marking Clerk (DOT Code 209.587-034, with an SVP of 2, and 129,000 jobs available nationally); Router (DOT Code 222.587-038, with an SVP of 2, and 35,000 jobs available nationally); and Shipping Weigher (DOT Code 222.387-074, with an SVP of 2 and 9,000 jobs available nationally).  AR 28-29. The ALJ therefore concluded that Plaintiff had not been disabled at any time from February 28, 2017, the alleged onset date, through the date of the ALJ's decision.  AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff contends that the ALJ erred by failing to include all of Plaintiff's credible limitations in the RFC findings and in the hypotheticals posed to the vocational expert. (Doc. 21 at 9.)

### **A. Medical Opinion of Nurse Practitioner Barbara Uichanco**

In arguing that the ALJ failed to include all of Plaintiff's credible limitations in the RFC findings and hypotheticals, Plaintiff raises the issue of whether the ALJ properly assessed the opinion of Nurse Practitioner Barbara Uichano ("NP Uichanco"). (Doc. 21 at 9-10.) Specifically, Plaintiff argues that the ALJ neither discounted NP Uichanco's limitation to no repetitive use of the right arm, nor included such a limitation in the RFC. (*Id.* at 10.) In response, Defendant argues that the ALJ is the ultimate arbiter of the RFC, the ALJ was under no duty to explain how he considered every limitation, and NP Uichanco's opinion did not meet the duration requirements. (Doc. 25 at 7-9.)

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 404.1520c. Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  Contrary to Plaintiff's suggestion, these standards of articulation no longer apply in light of the new regulations, and the ALJ was not required to provide "specific and legitimate reasons" to discount the medical opinions.  *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant").  However, the Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Id.*  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.*  (internal citations omitted); *see* 20 C.F.R. § 404.1520c(c).  In this context,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence. Id. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim. Id. § 404.1520c(c)(2).

*Id*. at 791-92.

NP Uichanco's opinion consists of three medical reports.  On February 22, 2017, NP Uichanco noted, "Activity Status: No lifting over 20 pounds, no carrying object over 10 pounds; No overhead work or repetitive use of right arm."  AR 403-404.  On May 4, 2017, NP Uichanco wrote "Activity Status: No lifting over 20 pounds, no carrying object over 10 pounds; No overhead work or repetitive use of right arm," set Plaintiff's next appointment as June 1, 2017, and noted "PATIENT ADVISED AND AWARE THESE RESTRICTIONS APPLY AT HOME AS WELL AS WORK AND ARE IN EFFECT UNTIL NEXT APPOINTMENT HERE."  AR 395-396.  On June 1, 2017, NP Uichanco opined "No lifting over 20 pounds, no carrying object over 10 pounds; No overhead work or repetitive

use of right arm," set Plaintiff's next appointment as July 13, 2017, and noted "PATIENT ADVISED AND AWARE THESE RESTRICTIONS APPLY AT HOME AS WELL AS WORK AND ARE IN EFFECT UNTIL NEXT APPOINTMENT HERE." AR 387-388.

In evaluating NP Uichanco's opinion, the ALJ summarized NP Uichanco's findings and reasoned as follows:

> Treating nurse practitioner, Barbara Uichanco, FNP, opined on three occasions between February 2017 and June 2017 that the claimant was limited to lifting no more than twenty pounds; carrying no more than ten pounds; no working overhead; and no repetitive use of the right arm. (Ex. 4F/12-15, 20-23, 28-31.) The undersigned finds the opinion of Ms. Uichanco persuasive to the extent that it is consistent with the residual functional capacity assessment detailed above. The record supports that the claimant is limited in his ability to lift, carry, and reach overhead with his right upper extremity because of his right shoulder impairment; however, his lack of treatment and his ability to perform a wide range of activities of daily living, including caring for his disabled wife supports that he is able to lift and carry twenty pounds occasionally and ten pounds frequently, as well as occasionally reach overhead with his right shoulder.

AR 24-25; 387-388; 395-396; 403-404.

While the ALJ appears to invoke the consistency and supportability factors with reference to the record and to Plaintiff's daily activities, the ALJ only does so in relation to the prohibitions against lifting over 20 pounds, carrying objects over 10 pounds; and overhead work.  *Id.*  The ALJ does not explain whether or why he accepted or rejected NP Uichanco's prohibition against "repetitive use of right arm."  *Id.*  In addition, the RFC does not contain a limitation on repetitive right arm use.  AR 20.  The omission of this limitation from the RFC and from the ALJ's analysis constitutes an implicit rejection of NP Uichanco's opinion that Plaintiff was not capable of repetitive use of his right arm.  The ALJ therefore erred by failing to provide an explanation supported by substantial evidence for rejecting this limitation.  *See Trejo v. Comm'r of Soc. Sec.*, No. 1:22-cv-00192-EPG, 2023 WL 2752194, at *3 (E.D. Cal. Mar. 31, 2023) ("the governing regulations require an ALJ to articulate how persuasive each medical opinion is and explain how the ALJ considered the supportability and consistency factors. Here, the ALJ's implicit rejection of [a physician's] assessment—that Plaintiff required an assistant device—without any explanation as to the relevant factors constitutes error.")

1   Defendant argues that the ALJ's opinion was supported by substantial evidence because the

2   ALJ addressed Plaintiff's lack of treatment for his shoulder and Plaintiff's admitted abilities and

3   activities.  (Doc. 25 at 8.)  Defendant further argues that the ALJ was not required to explain how he

4   considered each limitation in NP Uichanco's opinion.  (*Id.*)  However, while the ALJ addressed other

5   limitations in NP Uichanco's opinion, he did not explain or connect these to the repetitive right arm

6   limitation that he apparently rejected.  AR 24-25.  Additionally, while the ALJ is not obligated to

7   explain how he considered every limitation in each physician opinion, the ALJ "cannot reject an

8   examining or treating doctor's opinion as unsupported or inconsistent without providing an

9   explanation supported by substantial evidence."  *Woods*, 32 F.4th at 792.  As the ALJ implicitly

10   rejected part of NP Uichanco's opinion relating to the repetitive right arm use limitation, the ALJ was

11   required to provide an explanation supported by substantial evidence.  Therefore, the ALJ's failure to

12   explain the rejection of this limitation constitutes error.

13   Nevertheless, the Ninth Circuit has found the harmless error standard applies in instances of

14   ALJ's discounting of physician opinions.  *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015)

15   (holding that the "harmless error analysis applies ... to assess the impact of the ALJ's failure to even

16   mention [a treating physician] or [his] notes, let alone its failure to give specific and legitimate reasons

17   that are supported by substantial evidence for rejecting a treating source's medical opinion");

18   *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (holding that the ALJ committed

19   harmless error in misidentifying physician's notes); *Roy v. Colvin*, 656 F. App'x 816, 818–19 (9th Cir.

20   2016) (holding the ALJ committed harmless error where she did not consider a reviewing physician's

21   opinion because she believed the physician was "referring to 'another individual of the same name.'")

22   The Ninth Circuit has also "affirmed under the rubric of harmless error where the mistake was

23   nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."  *Stout v.*

24   *Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).

25   In a harmless error case where an ALJ evaluated a physician's opinion under the prior

26   guidelines, the court noted that while the ALJ acknowledged the opined limitations, the ALJ did not

27   provide reasons for rejecting the limitations.  *Salvas v. Berryhill*, No. CV 16-06956-JEM, 2017 WL

28   3731994, at *4 (C.D. Cal. Aug. 28, 2017), *judgment entered*, No. CV 16-06956-JEM, 2017 WL

3764313 (C.D. Cal. Aug. 28, 2017).  However, the court found that, "[a]s a matter of law, [the physician's] opinion cannot establish disability" because the limitations did not meet the twelve-month durational requirement.  *Id.*  The court concluded that the limitations were therefore not probative and any "failure to give reasons for not adopting these limitations is harmless error."  *Id.*  (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)); *see also Stamper v. Astrue*, No. 2:12-cv-0192-AC, 2013 WL 4094432, at *6 (E.D. Cal. Aug. 13, 2013) ("In finding that [the physician]'s assessment fails to meet the duration requirement, the court further finds that any error by the ALJ in not specifically addressing the contradictory findings in [the physician]'s report was harmless because [the physician]'s assessment was ultimately not inconsistent with the ALJ's RFC determination."). [4]

Here, although the ALJ erred in failing to explain his rejection of a limitation in NP Uichanco's opinion, the limitation at issue is ultimately nonprejudicial.  The Social Security Administration's duration requirement notes that "[u]nless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.  In reviewing the record, the right arm repetitive use limitation, NP Uichanco first noted the limitation on February 22, 2017.  AR 403-404.  She then repeated this limitation in treatment notes dated May 4, 2017 and June 1, 2017, but noted "PATIENT ADVISED AND AWARE THESE RESTRICTIONS APPLY AT HOME AS WELL AS WORK AND ARE IN EFFECT UNTIL NEXT APPOINTMENT HERE."  AR 387-388, 395-396.  On July 20, 2017, Plaintiff returned for his next appointment with Sequoia Prompt Care, where PA-C Letty S. Echeverria stated that Plaintiff could lift 40 pounds, could frequently lift 30 pounds, and could occasionally lift 50 pounds, could stand and walk "<8/8," sit a total of "< 8/8," was "unlimited" in push and or pull capacity, and that Plaintiff was discharged from care for his right shoulder injury.  AR 381-384.  PA-C Echeverria's notes did not include a right arm repetitive use limitation.  AR 377-384. [5]  As there were

---

[4] The Court recognizes that these cases precede the implementation of the new regulations.  However, these cases illustrate the basic duration requirement that applies under the old and new regulations.

[5] As noted by Defendant, the ALJ referenced PA-C Echeverria's opinion but appears to have cited an inaccurate summary and incorrectly noted that PA-C Echeverria opined that the "claimant was restricted to no lifting over twenty pounds, no carrying over ten pounds, no overhead work, and no repetitive use of his right arm."  AR 25, 377-380 (Treatment records from July 20, 2017 visit with PA-

1    only approximately five months between NP Uichanco's initial February 22, 2017 notes and PA-C

2    Echeverria's superseding July 20, 2017 follow-up visit notes removing Plaintiff's right arm repetitive

3    use limitation from his work restrictions, the right arm repetitive use limitation did not meet the Social

4    Security Administration's duration requirement.  *See* 20 C.F.R. § 404.1509.  Because the limitation

5    did not meet the twelve-month duration requirement, the ALJ's error in addressing the limitation is

6    nonprejudicial and therefore harmless error.  *Stout v. Comm'r*, 454 F.3d at 1055; *Salvas*, 2017 WL

7    3731994, at *4.

8            In support of his argument that the ALJ should have included the limitation, Plaintiff cites a

9    case in which the court remanded the matter after finding an ALJ did not properly reject or explain the

10   rejection of a gripping and grasping manipulation.  *See Jacques v. Colvin*, No. CV 12-2550-SP, 2013

11   WL 812100, at *5 (C.D. Cal. Feb. 25, 2013) ("The ALJ arguably also failed to adopt Dr. Nelson's

12   limitation against repetitive gripping or grasping with the left hand… Under *Gardner*, a limitation to

13   occasional manipulation on the left, as included in the ALJ's RFC, may not account for [the

14   physician]'s limitation to no repetitive gripping and grasping on the left.").  However, the ALJ's error

15   in *Jacques* is distinguishable from the present harmless error.  There, the court noted that "although

16   the ALJ cited to some of [the physician's] findings, he effectively ignored [the physician's] opinion

17   concerning plaintiff's work capacity and failed to explain why he omitted some of [the physician's]

18   limitations from plaintiff's RFC."  *Id.* at *4.  The court did not find the error harmless and required the

19   ALJ "clarify that his RFC is consistent with [the physician]'s preclusion from left hand gripping or

20   grasping. *Id.* at 5.  Here, the failure to explain the rejection of NP Uichanco's repetitive right arm use

21   limitations was ultimately harmless given the duration requirement.  AR 24-25.  Given the harmless

22   error here, this case is distinct from *Jacques* and does not require remand.

23           ///

24

25   C Echeverria that reference work restrictions but do not include limitations), 586-587 (Jeffrey M.
     Lundeen, M.D.'s summary of PA-C Echeverria's's opinion which incorrectly notes that the Echeverria
26   opinion stated no lifting over twenty pounds, no carrying over ten pounds, no overhead work, and no
     repetitive use of his right arm).  The actual work limitations from the July 20, 2017 follow-up visit
27   were that Plaintiff could lift 40 pounds, could frequently lift 30 pounds, and could occasionally lift 50
     pounds, could stand and walk "<8/8," sit a total of "< 8/8," was "unlimited" in push and or pull
28   capacity, and that Plaintiff was discharged from care for his right shoulder injury.  AR 384.

1

**B.  Residual Functional Capacity**

2       Plaintiff contends that the omission of NP Uichanco's limitation of no repetitive use of the

3  right arm from the RFC constitutes harmful error.  (Doc. 21 at 9-12.)  In response, Defendant argues

4  that the ALJ is the ultimate arbiter of the RFC.  (Doc. 25 at 7-9.)

5       An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all

6  the relevant evidence in [one's] case record," rather than a single medical opinion or piece of

7  evidence.  20 C.F.R. § 404.1545(a)(1).  Indeed, "an ALJ's RFC determination need not precisely

8  reflect any particular medical provider's assessment."  *Pinto v. Kijakazi*, No. 1:21-cv-00585-SKO,

9  2022 WL 17324913, at *9 (E.D. Cal. Nov. 29, 2022) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613

10  F.3d 1217, 1222-23 (9th Cir. 2010)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)

11  (finding RFC determination need not directly correspond to a specific medical opinion).  The Ninth

12  Circuit has also made clear that "it is the responsibility of the ALJ, not the claimant's physician, to

13  determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

14  Indeed, "an ALJ's RFC determination need not precisely reflect any particular medical provider's

15  assessment."  *Pinto v. Kijakazi*, No. 1:21-cv-00585-SKO, 2022 WL 17324913, at *9 (E.D. Cal. Nov.

16  29, 2022) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)); *see*

17  *also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding RFC determination need not

18  directly correspond to a specific medical opinion).

19       Plaintiff fails to demonstrate that the ALJ erred in his RFC assessment.  Plaintiff argues that

20  the ALJ should have included NP Uichanco's limitation of no repetitive use of the right arm in the

21  RFC, but the ALJ was not obligated to include every limitation of NP Uichanco's opinion in the RFC.

22  *See Pinto*, 2022 WL 17324913, at *9; *Chapo*, 682 F.3d at 1288.  Specifically, as discussed above, the

23  limitation Plaintiff argues should be included did not meet the Social Security Administration's

24  duration requirement and therefore was not required to have been included in the RFC.  *See* 20 C.F.R.

25  § 404.1509.

26       Beyond the right arm repetitive use limitation, the ALJ's analysis and RFC addressed NP

27  Uichanco's opined limitations.  The ALJ noted that he found NP Uichanco's opinion "persuasive to

28  the extent that it is consistent with the residual functional capacity assessment detailed above."  AR

25.  The ALJ noted that the "record supports that the claimant is limited in his ability to lift, carry, and reach overhead with his right upper extremity because of his right shoulder impairment;" while Plaintiff's "lack of treatment and his ability to perform a wide range of activities of daily living, including caring for his disabled wife supports that he is able to lift and carry twenty pounds occasionally and ten pounds frequently, as well as occasionally reach overhead with his right shoulder."  *Id.*  The ALJ was not required to include the limited duration repetitive right arm use limitation in the RFC, and properly considered the remainder of NP Uichanco's opined limitations while developing the RFC.  The ALJ therefore properly determined Plaintiff's RFC.

Plaintiff further argues that the ALJ erred as the inclusion of occasional overhead reaching with the right upper extremity in the ALJ's RFC limitation is not equivalent to a limitation of no repetitive use of the right arm.  (Doc. 21 at 10-11.)  Specifically, the ALJ's RFC included a limitation that Plaintiff "can do occasional overhead reaching with the right upper extremity" whereas NP Uichanco opined "No overhead work or repetitive use of right arm."  AR 20, 387-388, 395-396, 403-404.  Plaintiff cites cases in which courts defined "repetitive" in the context of hand use as distinguished from frequent or occasional hand use.  *See Gardner v. Astrue*, 257 F. App'x 28, 30 n.5 (9th Cir. 2007) ("Although we do not base our holding on this point, we note that 'repetitively' in this context appears to refer to a qualitative characteristic—i.e., how one uses his hands, or what type of motion is required—whereas 'constantly' and 'frequently' seem to describe a quantitative characteristic—i.e., how often one uses his hands in a certain manner."); *Macapagal v. Astrue*, No. C07-03706 HRL, 2008 WL 4449580, at *4 (N.D. Cal. Sept. 29, 2008) ("In this context, the term 'repetitive' seems to describe the manner in which a person uses her hands and the type of action required, whereas the term 'occasional' reflects how often a person uses her hands in a particular manner.  The hypothetical to the VE suggests an individual who could use her left hand occasionally, whereas the ALJ's found that plaintiff should not use her left hand in a repetitive manner at all, whether occasionally or frequently.").

However, this case is distinguishable from *Gardner* and *Macapagal*.  First, as discussed above, the right arm repetitive use limitation did not meet the durational requirement and was therefore properly excluded from the RFC.  Second, the issue before the courts in those cases was the

mischaracterization of an RFC limitation posed in a question to the VE.  *See Gardner*, 257 F. App'x at 30 ("The ALJ's RFC finding stated that [plaintiff] 'should not use his hands repetitively for manipulation bilaterally.' However, the hypothetical question that the ALJ posed to the VE employed different terminology. The ALJ first referred to 'constant, repetitive' manipulation and then referred to 'frequent ... just not constant" manipulation.'"); *Macapagal*, 2008 WL 4449580, at *2 (The court noted that the issue was whether "the ALJ's RFC finding is inconsistent with the hypothetical given to the VE because the hypothetical contemplated an individual capable of 'occasional typing with the left hand,' whereas the ALJ concluded that plaintiff is 'precluded from repetitive use of the left hand.'"). The courts in those cases found that ALJs' RFC limitations differed from the limitations described in the ALJs' questions to the VEs.  *Id.*  Here, however, the ALJ included the same limitation – occasional overhead reaching with the right upper extremity – in the questions posed to the VE, and excluded the right arm repetitive use restriction which did not meet the duration requirement.  Because the repetitive right arm use limitation was properly excluded and the ALJ included the same limitation in both his RFC and question to the VE, this matter is distinguishable from *Gardner* and *Macapagal*.

Accordingly, the ALJ did not err by omitting a limitation of no repetitive use of the right arm from the RFC.

**C.  Vocational Expert Hypothetical**

Plaintiff also contends that the omission of NP Uichanco's right arm repetitive use limitation from the ALJ's hypotheticals to the vocational expert constitutes harmful error.  (Doc. 21 at 9-12.) However, the Ninth Circuit has held that an ALJ does not err where the ALJ includes all limitations found to exist in the hypothetical questions to the vocational expert.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("The omitted limitations, however, were only those that the ALJ found did not exist. Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [claimant] had claimed, but had failed to prove.")  As discussed above, the ALJ was not obligated to include the right arm repetitive use limitation that Plaintiff did not prove met the duration requirement.  The ALJ therefore did not err by only including the limitations he found to exist in the hypothetical to the VE.

1    Plaintiff further argues that this case is analogous to *Castro v. Astrue*, in which an ALJ
2    "determined that Plaintiff was limited to 'no repetitive grasping,'" and the court found that the
3    Commissioner had not met its burden at Step Five.  No. 1:10-cv-01092-AWI-SKO, 2011 WL
4    3500995, at *10, 13 (E.D. Cal. Aug. 9, 2011).  However, this comparison is inapposite.  In *Castro*, the
5    "VE was asked to testify about a hypothetical person's ability to perform work when limited to no
6    more than occasional grasping" when the ALJ had found a limitation of "no repetitive grasping."  *Id.*
7    at 12.  There, the court framed the issue as whether "the frequency of handling activities (which
8    include grasping) identified by the SCODICOT equates and applies to the ALJ's finding that Plaintiff
9    is limited to 'no repetitive grasping.'"  *Id.*  Here, however, the RFC appropriately excluded a limitation
10   that lasted only five months.  AR 20; 20 C.F.R. § 404.1509.  The ALJ then included all the limitations
11   in his RFC in the questions posed to the VE.  AR 54.  As the ALJ's limitations posed in hypotheticals
12   to the RFC matched the limitations in the RFC, the court's conclusions in *Castro* do not support a
13   finding that the ALJ erred in the hypothetical posed to the vocational expert.
14        Accordingly, the ALJ did not err in omitting this limitation from the hypotheticals posed to the
15   vocational expert.
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

Further, for the reasons stated above, IT IS HEREBY ORDERED as follows:

1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied; and

2.    The Clerk of this Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff James Paul Daniel.

IT IS SO ORDERED.

Dated:   **September 13, 2023**          /s/ *Barbara A. McAuliffe*
                              UNITED STATES MAGISTRATE JUDGE

19